**MONTEZUMA WELL SERVICE, INC. and Colorado Compensation Insurance Authority, Petitioners and Cross–Appellee,**

v.

**The INDUSTRIAL CLAIM APPEALS OFFICE OF the STATE OF COLORADO, Billy J. Lackey, and Subsequent Injury Fund, Respondents and Cross Appellants.**

No. 95CA0793.

Colorado Court of Appeals, Div. II.

May 2, 1996.

Rehearing Denied June 20, 1996.

Certiorari Denied Dec. 3, 1996.

Michael J. Steiner, Denver, for Petitioners Colorado Compensation Insurance Authority.

Crane and Tejada, Bethiah B. Crane, Douglas R. Ware, Durango, for Respondent Cross–Appellant Billy J. Lackey.

Gale A. Norton, Attorney General, Stephen K. ErkenBrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, J. Anthony Ogden, Assistant Attorney General, Denver, for Respondent Cross–Appellant Subsequent Injury Fund.

Opinion by Judge TURSI.*

Petitioners, the Colorado Compensation Insurance Authority (CCIA) and the Subsequent Injury Fund (SIF), seek review of a final order of the Industrial Claim Appeals Panel determining that the permanent total disability (PTD) benefits payable by petitioners to Billy J. Lackey (claimant) do not terminate when he reaches age 65. In view of the pronouncement in *Industrial Claim Appeals Office v. Romero*, 912 P.2d 62 (Colo. 1996) that § 8–42–111(5), C.R.S. (1995 Cum. Supp.) is unconstitutional, the petitioners alternatively challenge the validity of § 8–42–111(4), C.R.S. (1995 Cum.Supp.) as it existed during the period from July 1, 1991, until July 1, 1994. We affirm the Panel's order and find no reason to sever retroactively § 8–42–111(4) from the Workers' Compensation Act (Act).

The Administrative Law Judge (ALJ) determined that the CCIA is liable for 90% of claimant's PTD benefits and that the SIF is liable for the remaining 10%. In the order, the ALJ did not specifically address the termination of benefits at age 65; however, the ALJ provided that benefits are to continue in accordance with the Act. Section 8–42–111(5), then in effect, required claimant's PTD benefits to terminate at age 65, while § 8–46–101(1)(b)(I), C.R.S. (1995 Cum.Supp.) required the SIF to pay benefits during an eligible claimant's life.

---

* Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, Sec. 5(3),

and § 24–51–1105, C.R.S. (1995 Cum.Supp.).

Subsequent to the ALJ's order, but before the Panel issued its order, a division of this court announced *Romero v. Industrial Claim Appeals Office,* 902 P.2d 896 (Colo.App.1995), and concluded that the age cap in § 8–42–111(5) violates the constitutional guarantees of equal protection. Relying on *Romero,* the Panel modified the ALJ's order to reflect that claimant's PTD benefits shall not terminate at age 65. During the pendency of this appeal, the supreme court affirmed *Romero. Industrial Claim Appeals Office v. Romero, supra.*

Petitioners concede that the affirmance of *Romero* has rendered several of their issues moot, *see Duran v. Industrial Claim Appeals Office,* 883 P.2d 477 (Colo.1994) (issue is moot if its resolution cannot have any effect upon an existing controversy), leaving only the issue of the severability of § 8–42–111(4) to be decided in this appeal.

■ Petitioners contend that since the age cap provision in § 8–42–111(5) is unconstitutional, then § 8–42–111(4), which provided for a cost of living adjustment (COLA) for PTD benefits, should also be rendered void *ab initio* because it is not severable from the age cap provision. They argue that since the General Assembly originally adopted the age cap as a means of paying for the COLA, continuing the COLA in the absence of the age cap would thwart the legislative intent to contain costs. We disagree and conclude that the COLA is severable from the age cap provision and should not be stricken.

■ At the onset, contrary to claimant's argument, we note that, the fact that petitioners did not raise the COLA issue before the ALJ and Panel does not preclude them from raising the issue here. *See Industrial Commission v. Board of County Commissioners,* 690 P.2d 839 (Colo.1984) (constitutional issues arising in cases commenced in what is now the Department of Labor and Employment may be raised for the first time on appeal to the court of appeals); *cf. Arapahoe Roofing & Sheet Metal, Inc. v. Denver,* 831 P.2d 451 (Colo.1992) (better practice is to raise issue of constitutionality of workers' compensation statute in district court). Hence, we will address the merits of the issue.

■ A specific severability clause prevails over the general one contained in § 2–4–204, C.R.S. (1980 Repl.Vol. 1B). *See People v. Duc Nguyen,* 900 P.2d 37 (Colo.1995). Both § 8–42–111(4) and § 8–42–111(5), which effected sweeping changes to the Act, were enacted as part of one bill in 1991. That legislation contains a severability clause which provides that:

> If any provision of this act or the application thereof to any person or circumstances is held invalid, such invalidity shall not affect other provisions or application of the act which can be given effect without the invalid provision or application, and to this end the provisions of this act are declared to be severable.

Colo.Sess.Laws 1991, ch. 219, at 1342.

■ A severability clause creates a presumption that the General Assembly would have been satisfied with the portions of the statute that remain after the offending provisions are stricken as unconstitutional. *People v. District Court,* 834 P.2d 181 (Colo. 1992). This presumption is dispelled if what remains is so incomplete or riddled with omissions that it cannot be salvaged as a meaningful legislative enactment.

■ Whether unconstitutional provisions are excised from an otherwise sound law depends on two factors: (1) the autonomy of the portions remaining after the defective provisions have been deleted and (2) the intent of the enacting legislative body. *Lakewood v. Colfax Unlimited Ass'n,* 634 P.2d 52 (Colo.1981).

In 1991, the Conference Committee on the amendments at issue here discussed the costs associated with the COLA, the age cap, and a medical fee freeze. Although the 2% COLA increased the cost of awards of PTD benefits, committee members recognized that the age cap and medical fee freeze decreased costs. The age cap and medical fee freeze appear to have been considered as a means to "derive some additional saving" for the increased costs stemming from the COLA. Hearing on S.B. 218 before the Senate Conference Committee, 58th General Assembly, First Regular Session (May 5, 1991). *See*

*also Romero v. Industrial Claim Appeals Office, supra.*

However, this discussion is insufficient to overcome the presumption of the specific severability created by the enactment of the severability clause. And, the fact that a different General Assembly, three years later, may have concluded that the age cap and COLA were interrelated, resulting in the simultaneous amendment of both, *see Romero v. Industrial Claim Appeals Office, supra,* does not persuade us otherwise. We do not consider ourselves bound by a subsequent legislature's pronouncement of legislative intent. *Cf. Regents of University of Colorado v. Meyer,* 899 P.2d 316 (Colo.App.1995); *BQP Industries, Inc. v. State Board of Equalization,* 694 P.2d 337 (Colo.App.1984).

Furthermore, petitioners have failed to show that, without the age cap provision, the remainder of § 8–42–111 could not function as a meaningful legislative enactment. We conclude that, because the remaining provision governing PTD benefits would allow a claimant to receive benefits until death, that provision could operate as a unified statute without the age cap. *See Lakewood v. Colfax Unlimited Ass'n, supra.* The mere fact that the age cap may have been a political or economic trade-off for the COLA affects neither the operation nor the meaning of the COLA. *Cf.* Colo. Const. art. V § 40.

Inasmuch as the presumption of severability has not been overcome, *see People v. District Court, supra,* we hold that the COLA may be given effect even though the age cap was declared invalid.

The order of the Panel is affirmed.

CRISWELL and JONES, JJ., concur.